Number 4-17-0838 and I'll try to get the last name correct. Mark Kasprzyk petitioner and Marianne Kasprzyk respondent. For the appellant is attorney Ashley Davis and for the athlete is attorney Nicole Thomas. Good morning. Ms. Davis are you ready to proceed? How close was that pronunciation? Kasprzyk. Kasprzyk. So I believe that was pretty close your honor. Alright. I know all of us struggled with it for quite some time so I don't think that either of the parties would hold it against you whatsoever. Thank you. May it please the court, counsel. For the recording I am Ashley Davis and I represent the petitioner appellant Mark Kasprzyk in this matter. Now your honors the facts in this matter are fairly straightforward and not in dispute. The dispute here instead lies in the application of the statute and the application of the law to the facts in this matter. Like I said the facts are not really in dispute by the parties. We have a couple who was married for 25 years and a judgment of dissolution was entered in November of 2014. The judgment among other things divided the assets and debts between the parties and in particular in this case awarded maintenance to Mary Ann. I believe that the language that the court used in the judgment was important in this case and that's why I'd like to go over it very quickly. The language in the judgment said that maintenance would be awarded in the amount of $500 for two years at which time the maintenance would then be subject to review. The judgment though went on to say that unless the respondent files a petition to extend maintenance, the maintenance would automatically terminate. It also said that the burden was on the respondent, Mary Ann, to establish that she had a continued need for the maintenance. I have two points that I'd like to discuss with the court today and that I think are important for the court to consider. The first point is whether or not the trial court should apply statutory guidelines for the duration of a maintenance award to a review of maintenance. When we're looking at a review that was originally decided before the maintenance statute went into effect. The other point that I'd like the court to consider today is whether or not the trial court erred in this matter in finding that Mary Ann had a continuing need for maintenance. I'd like to start with the statutory guideline issue because I believe that this is an important issue for the court and it's an issue that has caused some confusion among the Illinois trial courts. As we all know, in January of 2015, we had a change to the maintenance statute and we had statutory guidelines that went into effect. These statutory guidelines applied to all cases that were decided after January of 2015. We have guidelines that now dictate the amount of maintenance to be awarded and the duration for the maintenance to go into effect. Since 2015, questions have arisen regarding how this statute applies to cases that were decided prior to 2015 but are now coming up for either a modification or a review, which is what we have in this case. Recent case law suggests that there is actually maybe a circuit split between the different circuits in Illinois on what we do with the duration part of the guidelines. I believe that most of the circuits have decided that the amount part of the statutory guidelines is applicable to review or modification actions, but the duration part is a separate part of that. And that's the issue that is causing court's confusion and an issue that I believe that the court erred in in this case. Counsel, before you proceed, has the Supreme Court granted PLA in any appellate court case that has dealt with this issue? I'm not aware if the Supreme Court has granted PLA in any case, Your Honor. I know that there are several cases that have dealt with this in different districts, and I honestly don't know if the Supreme Court has granted that. I'd be happy to look into that and get back to the court on that issue. Well, it was a question I had that no need to do additional research on. All right. Thank you, Your Honor. What did you say the districts have agreed upon? Because the 5th district case and the 2nd district case didn't seem to mean to indicate that there was agreement on either the duration or the formula. If you say there isn't recognition among the districts that something, some part of the new statute applies. The amount portion, Your Honor. Yes, so that is the first part of the guidelines and how we figure out the amount. Is that what that 5th district case said? That's not exactly, the 5th district, that's not exactly what they said. The 5th district case got into whether or not the guidelines really were in effect for the duration, and then said that since they weren't in effect for the duration, that the guidelines weren't going to apply at all. I believe that most of the courts have been looking at this and saying, if we're putting the guidelines into effect and we believe that the amount should be considered and there should be a modification, then we do use the amount calculation. That's what a lot of the courts say. Okay, you say most of the courts. I thought you had misspoken. You said circuits earlier, but maybe you meant to say circuits. I meant to say circuits. I'm sorry, Your Honor. No, you did say circuits. As far as the districts, the appellate court districts, there's no agreement that the amount, the formula applies among the districts, but the duration does not, is there? That's correct, Your Honor. So there is no agreement right now on how these statutes and how the duration is applying to these new cases that are coming up that are dealing with prior to 2015. So as you mentioned, we have this fifth district case, which is Harms v. Parker, that the court in this case specifically looked at whether or not the guidelines should be applied to that case. In that case, the court looked at the language of the statute particularly, and the court focused on the two different sections that we deal with, which is 504 and then also 510. 504 deals with initial awards of maintenance, and then 510 deals with modifications of maintenance. There in Harms v. Parker, the court looked at 510 and said, well, in a modification, what do we need to look at? They said specifically that they could not find anywhere in 510 that 510 referred back to the duration guidelines, and since it specifically was not in the statutory language, that they then weren't going to apply it, and they didn't believe that those guidelines were going to apply. We have the second district case of Marriage of Carsons, which was decided in March of this year, which took a slightly different view on the subject, and they looked at this and said that in a review action, once the court has decided that there has been a substantial change and they've applied the facts to the factors, then the court should be able to look at the statutory guidelines and use the duration guidelines and come up with what they believe is appropriate. Now, what I thought was interesting about the Carsons case is it actually added in some language about review actions as opposed to just maintenance or modification actions. And why I think that difference is important is because we're dealing with a review action here and not a modification. I believe that a lot of these cases are going to be modifications that have come up, and that's why more of the cases are focused on them so far, but we do have cases like this that are reviews. In the second district Carsons case, the court looked at the language that's in 504B8, which governs the review of modification actions, and implied that they weren't finding any language in there that would refer this back to the duration guidelines. But then the court went on to say that we're not going to make any findings about whether or not the guidelines should go to deal with modification actions. So it gave us a little bit of dicta to look at here, but didn't give a specific answer on whether or not the duration was going to apply to review guidelines. Well, counsel, the second district relied upon 5-801, and that is the language, this act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this act. Fifth district didn't even mention that section. Correct, Your Honor. Who's right? Well, Your Honor, it would be my position that... Which court, I mean? I believe that the fifth district is right, Your Honor. Okay, well then how would you respond to the second district's argument that that section being 5-801C doesn't govern? I believe that it governs cases that are pending, but we have to look at how the statutes individually apply to each other by looking at the specific language in the statutes. I believe that we have that 801 section that is more of a general overall section that says anything that's pending at this time, yes, we look at the statutes that we have, but then for the specific statutes, so say the B-8, which is a review action, it specifically mentions looking at the amount guidelines, but there's nothing in there that says that we need to look at the duration guidelines, and I think that's what the fifth district was really getting at here, and that's what I think the court needs to carefully consider is how do we read these statutes in conjunction with each other? Your client didn't make that B-8 argument to the trial court, however, did he? No, he did not make that argument to the trial court. Does that matter? Your Honor, in this case I don't believe it does because it's the holding statute that is what we're under. I believe that even if we didn't say specifically B-8 should apply, B-8 is the controlling statute here, and that is what applies, so I don't believe that that is an argument that is waived in any way, Your Honor. Looking at the practical effect is another thing that I would like the court to consider when we look at how these statutes interact with each other and how the statutes are going to affect these new modification and review cases that we have coming out. As we discussed in the briefs, Your Honor, we are going to have a number of cases that are either going to be modified or reviewed that all occurred prior to any guidelines of any sort went into effect. As we all know, before the guidelines went into effect, it was a complete judicial discretion, essentially, in the trial court where the judges could essentially decide what they believed was best and set maintenance in that way. In those cases, a number of times the judges thought very hard about what sort of order they were going to put in for maintenance, how long maintenance was going to be, what the amount was going to be. We now have a formula that could be coming in and completely changing what people have been relying on for several years. I think the practical effect of this for individuals could be very important and very hard on individuals. I mean, you could go both ways in these cases. You could have a case that is similar to the case we have here, in which we have a case where maintenance was awarded for two years, set to terminate, unless there was a petition to extend filed and then it would be reviewed for the court, that all of a sudden this award of maintenance has now been made permanent. On the other hand, you could also have an award of maintenance that could have been permanent or very long-term in nature, that a party could either come into the court, ask for modification or for review, and then if the court is only to rely on the statutory guidelines, come back and say, well, actually, you have already passed the time that the statutory guidelines say you should have had maintenance, so we're just ending it immediately. You used the word review in there. Yes, Your Honor. If permanent maintenance was ordered, there's no provision for it to be reviewed. That's correct, Your Honor. That would be more on a modification. If I ordered permanent maintenance, either for 25 years or for a lifetime, the modification of it would require a substantial change in circumstances. That is correct, Your Honor. So we do have that provision that I do think is a safeguard in the modification actions. The court has said there has to be a substantial change in circumstances, and the trial court has to apply the facts of the case to the factors before it can get to modifying any award. So I do believe that you're right in that that creates a safeguard for those cases. But we do have these actions where if there is a substantial change in circumstances that maybe necessitates changing the amount of the award or some other small aspect of the award, does that then mean that just because we're changing a small amount of the award, do we automatically have to apply the duration guidelines as well? And could that change, like we said, a permanent award to something that would already terminate because they have passed the time limit that the new guidelines would have given them? I think these are important considerations for the court to think about in this case and how these practical implications are going to play in with these reviews and these modifications. And that's why I believe that this is an important issue. In this case specifically, like we've talked about, we do not believe that the duration guidelines should be applied in this case. Again, we have a review action, and we believe that it would be within the trial court's discretion if they wanted to say that there should be an extension of the maintenance award or different ways to make this award longer, but to just automatically say, I am following the statutory guidelines, and the statutory guidelines say this is permanent, we believe that that's an error by the court, and that's something that this court should overturn. Have you read the case that was just very recently cited by your opponent here, In Right Marriage of Harms, the other district case that bears on this issue? Yes, that's Harms v. Parker, Your Honor. What are your thoughts on that case? Well, Your Honor, I actually think the court was more on point in that case, and where they looked at whether or not the guidelines were applicable, and they looked at how the language in the statute did not look at the duration guidelines, and so they were saying that because the language in the statute for modification in 510 did not reference the duration guidelines, that the duration should not be applicable to these modification actions. I believe that the court was in the right direction on that case, and that's more of what this court should look at as well. In that case, the court focused on the fact that 504, which gives us the duration and the amount guidelines, is for initial awards of maintenance, and therefore when there is no essential callback from modification to that 504, that the court shouldn't be then using 504. I think that it's interesting because a lot of the factors are listed in 504, but if we look at the modification statute, 510, it also lists a number of factors for the court to consider. So I believe that when the legislature was putting this up, if we look at just the strict reading of the statutes, we can look at how the legislature was careful to make sure that they included factors in 510 and didn't just say we're only referring you back to 504. They were pretty specific about we're putting in factors, this is what we want the court to look at when doing a modification, and didn't specifically say we're using these guidelines. I think that's interesting if we also then apply that to review actions in B-8, because if we look at the B-8 for reviews, it specifically has a part at the bottom of it that says you can look at the amount guidelines, and where it refers back up to the statute for the amount, because when we go down the line I believe it's a B-B-1-B-1-A is how we get to that amount section, and it specifically says we can look at the amount in finding and doing a review action. Nowhere in that paragraph about reviews does it get into the duration guidelines. I'm assuming that's how the court came up with $450 per month by using the formula? That is correct, Your Honor. Under the new statute, and you have no problem with that? I don't have an issue with that, Your Honor. I believe it is written in the statute that on a review, if the court decides that they're going to extend maintenance or they're going to modify maintenance, for this review action the statute directs us back exactly to that part of the statute. I noticed that Harms didn't even mention Carstens. Do you think that's probably because Carstens was not technically released yet? I'm only speculating, Your Honor. That would probably be my guess, is maybe the court just was not aware of it. That wouldn't have precluded them from at least acknowledging that it was out there. Yeah, I would normally expect that the court would have acknowledged it was out there and said this court found this, but we're looking at this issue in another way. The fact that Carstens was decided in March of 2018 and Harms v. Parker came out in May of 2018, we do have a pretty close gap in time there, and so I wonder if the court just was not aware of Carstens and hadn't had time to look at how another court was handling this issue. Counsel, before you run out of time, we need to talk about tithing. Yes, Your Honor, we do. At least mention it so you can get back to it in rebuttal. I appreciate that, Your Honor. This is the other very important issue that I wanted to bring up today. And can I ask you, which statutory maintenance factors should this be considered under? Tithing, I believe that Marianne is going to argue that it comes under standard of living, and I believe that standard of living is something that the court needs to look at here. I also think that tithing comes under the needs statutory factor, the earning capacity, and the standard of living, and the different sources of income. So there's a lot of different factors that I think all work together here and that the court needs to consider. The tithing issue, I think, was one of the most important things for the court and for my client in looking at whether Marianne has a continuing need for maintenance or not. As we saw, and as was presented in the trial court, Marianne freely admitted she testified to this and put on her financial affidavit that every month she donates $500 voluntarily to her church. She also receives $500 per month in maintenance. She has made the argument that she tithes to her church. She also made the argument that this is something that was done during the marriage, that she's always done it, and this is important to her. Why we think this is inappropriate is for a couple reasons. One, if she has the money to voluntarily make a religious donation to her church every month, we don't believe that she has a continued need for maintenance. She is not using this money for her own self-sufficiency. She's not, and I see that I'm out of time. Complete your thought. Okay. We will have time for rebuttal. I appreciate it. What I was saying, Your Honor, she is not using this money for her own self-sufficiency. She is not using this money to take care of herself in any way. This is money that she is giving to a religious organization by her own free will, and the problem that this gets into is that this is then putting the burden on Mark to essentially fund her ability to tithe to a church, which he testified at least to. There was no history of this being done in the marriage. Whoa, whoa, whoa. He did testify to that? He did, Your Honor. Where is that in the record? Unfortunately, we did not have a court reporter. We had an agreed statement of facts, Your Honor. In the agreed statement of facts, does that show that that was testified to and that he contradicted her statement? I believe that it is in the agreed statement of facts, and I would be happy to look for that in just a quick second during counsel's argument. But it was testified to, both parties testified to, the income tax returns and how there is no evidence of tithing or religious donations on any income tax returns during their marriage. That's different. That's correct, Your Honor. I agree that there's two separate things, but there was testimony about their being… Her family did not take that as a deduction. Correct. But did he say she never gave $500 a month to the church? To his knowledge, that was his testimony, is that to his knowledge, he was not aware of her ever giving… When the trial court originally gave $500… Correct. Was the trial court aware that she was tithing $500 per month? I do not know if anyone knew that at that time. You don't know? No. Okay. Thank you, Ms. Davis. You'll have time for rebuttal. Thank you. Ms. Thomas. And perhaps maybe you can pick up where we left off here with Ms. Davis in terms of the tithing issue. Great. May I please report? Go ahead. For the record, I am Nicole Thomas, and I represent the appellee in this matter, Marion Kasperzak. As the court has asked me to go ahead and pick up with the tithing, I'd like to give a little bit of an introduction for that. In this matter, Marion makes significantly less income than her ex-husband, Mark. She has a significantly lower earning capacity than Mark, and therefore she's not capable of maintaining the standard of living that the parties established during their marriage. Mark, however, is capable of maintaining the standard of living. On top of maintaining the standard of living, he is capable of continuing to pay maintenance to Marion. Because of these facts and other relevant factors considered by the trial court, the trial court did award permanent maintenance in the amount of $450 per month, which the court has noted is a deviation from the $500 original. The issues before this court are twofold, whether or not there is a continuing need and whether or not the application of the new guidelines was appropriate. I will establish that the trial court was correct in both issues. There is a continuing need and the guidelines were appropriately used here for duration. So we ask that this court affirm the trial court's holding. All right. In terms of the tithing, this is a donation that is made on a monthly basis, correct? Correct. It's not a household expense. Is there a parallel to be drawn between a religious tithing and donations of other sorts? Let's say that during the course of the marriage, the parties have made donations to the Boy Scouts of America or the Sierra Club in the amount of $500 per month. And then your client makes the same argument here in terms of request for maintenance that she wishes to continue making these donations to the Sierra Club or to the Boy Scouts. So first, are the two equivalent? Or should we draw a qualitative distinction between a religious donation and donations of other sorts? I guess that would be the first question. And then secondly, should a party be compelled to pay maintenance in order to fund donations of this sort? Your Honor, as far as a donation to a charity like you said, the Boy Scouts, I believe they are very similar. I don't believe the court should focus on the fact that this is donated to a church. It is a donation that the parties made during their marriage. As opposing counsel spoke about, there is an issue of whether Mark agrees that this was donated during the marriage. However, the trial court found that it was donated during the marriage. The trial court is the prior of fact, and it has the credibility of the witness to determine. So you're saying there shouldn't be a qualitative distinction drawn here, that it's a religious tithing donation versus any other kind of donation? Right, Your Honor. I don't think we should focus on the fact that this is a religious donation. Counsel, let me ask you, did they itemize when they filed their taxes? Your Honor, that I am not sure. All I know is that it was not included on their tax returns, Your Honor. And no one asked that question, whether they itemized, because it wouldn't be on the tax returns if they didn't. But if they did, it only stands to reason that they would take the deduction. But we don't know the answer to that. Correct, Your Honor. The court did make reference that she made cash contributions. Yes, Your Honor. Which would be, she goes into church every week and puts in $125 in cash. Yes, Your Honor. And the husband says he doesn't have any knowledge of that, and the court makes the finding. We do give deference to credibility, finds that completely credible, I guess. Yes, Your Honor. That there's nothing in the taxes, and it's all cash. Your Honor, I understand where you're coming from. And if you miss a week in church, then I guess you put in $250 in cash the following week. Your Honor, I completely understand where you're coming from. But Mary Ann did testify that she gave these monthly. Again, from what I'm understanding, Mark did not testify that they didn't give them. He said he wasn't aware of it. That these donations were made. And as far as whether or not the trial court can compel these maintenance payments to still be made, even though she is making these donations, I think this falls under the standard of living. Like it was testified to, this happened during the marriage. These donations were made during the marriage. The standard of living that the parties established during the marriage allowed them to make these donations. The trial court is not requiring Mary Ann to keep making these donations. The trial court is not requiring any party to make any donations to a religious institution against their will. The only thing the trial court is doing is requiring... So the ability to tithe is part of the standard of living established during the marriage? Yes, Your Honor. Is there a case that says that? Because I haven't found one. To be honest, Your Honor, I did not find a case on point. That would mean that the legislature, when it put into the statute, put the factors in there, standard of living, and that's one of the really critical factors that courts for years have considered, were actually contemplating the ability to tithe. That is hard for me to accept. Your Honor, I don't think it should be necessarily considered that they were contemplating the ability to tithe. I think it would be tied up in also other donations, other gifts that the parties could make, and that their standard of living provided them with the ability to make those kind of gifts and donations. Well, that sure seems to be what the trial court found, because I noticed when he was talking about tithing, he said it's a standard of living that existed then and still exists now. Yes, Your Honor. So, for you to be successful here, we have to accept that standard of living includes the ability to make charitable donations or tithe or whatever the case may be. I think, yes, Your Honor, if the parties enjoyed the standard of living during their marriage that allowed them to do that, especially when a donation or a charitable gift is as important to the party as tithing is to Mary Ann. It's something that she obviously felt very strongly about and continued to do after the marriage. Well, tithing $500 per month from a marriage that brings in $130,000, $135,000 is a different consideration than tithing once the dissolution has occurred and that that amount would stay the same, because now it's not from two people, even if he didn't know about it, it's from one person. It doesn't seem like the trial court even considered that. Your Honor, I think the trial court did consider what you're asking during the trial. This was all brought up to the trial court during testimony. Again, as counsel said, Mark testified that he just was not aware of it. But I think this was all brought up to the trial court. I understand where you're coming from, that it is now one person versus two. But again, I go back to the standard of living allowed them to make these donations. What about the very practical reality, which is after the parties split and are now maintaining two separate households, that this ability to tithe is no longer practical? You now have to look at Mark's standard of living. If he is compelled to pay $450 per month in maintenance, and according to his expenses, the listing of expenses, his standard of living is not on par with what it was during the course of the marriage. How are we to account for that in this trial court decision? I think Mark's standard of living is comparable to what it was at the time. The trial court, through the testimony and the record, found that there had not been a significant change in either party's circumstances. With the $450 per month taken into account, what is the net for Mark on a monthly basis between income and expense? That I would not know offhand, Your Honor. I could supplement that to the court. Again, I would ask that the court not focus on the fact that this is a religious donation, but again, that it is just a charitable donation that Mary Ann feels very strongly about, and that she was able to do during her marriage. And she testified to that. That she was able to make these donations during marriage, yes, Your Honor. Not that she was able to, but the importance to her. Your Honor, I could not say whether or not she did for sure. Because that's not probably in the agreed statement of facts. Correct, Your Honor. And there's no court report. Correct, Your Honor. Isn't it critical to you, to your argument, that whether it's tithing, or it's the Sierra Club, or Greenpeace, or whoever, whatever charitable organization, that it's importance to the person, which is part of standard of living in the sense of it's important to you to take a vacation, so you don't get to complain that you're using some of the money you get from maintenance maybe to take a brief vacation, even though it might be somewhat impractical, you're getting away from your job or whatever. You could argue it that way. But the importance of it seems to me to be significant. Yes, Your Honor. And that's lacking in the record. Well, I think from the record she did testify that she does this on a routine basis every month. I think that continuation of doing it every month would show how important it is to her, Your Honor. Did it indicate for what duration, how far back she had been doing this? No, Your Honor, just that it had been taking place during the marriage. I would like to get a little bit into the issue of the guidelines. In the appellant's brief, they cite Colby-Cole. I'd just like to point out that that's not relevant here. Everything in Cole took place before the guidelines went into effect. The only thing that didn't was the actual judgment that had been taken under advisement. The court ruled that since this is substantive in nature, it can't be applied retroactively. But unlike in Cole, here the extension was filed in 2006. All of the evidence was heard in 2017, and it was decided in 2017, again, after the new guidelines had gone into effect. As the court stated earlier, 801C states that this act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date. That's what it says, but what does that mean? I'm not convinced it means what the Second District says it means. That phrase has been in the act since it was passed in 1977 or whenever it was, hasn't it, that 801C? I believe so, Your Honor, yes. How does that apply then to these new modifications to the statute? I think it goes back and applies. The act means the whole disillusion act, doesn't it? Yes, Your Honor. Well, like I say, that language has been there since the outset. And the only modification I could find is it struck some language from it. But I don't see how the Second District correlates that into controlling whether the new statutory guidelines affect modifications and reviews. I'm sorry, what did you say? If you can explain it to me, I would really appreciate it because I don't get it. When you say modification, it struck some language. Do you mean the statute itself? 801C had an additional sentence at the end regarding alimony prior to 1977. That was lined out. That's the only thing that I can see has ever been changed. But the pertinent language in 801C is exactly the same as it was at the outset when the act was put into law. I just want to clarify that we weren't talking about the judgment that had been modified. I believe that it goes back and it does what it states, Your Honor. It applies to any modifications after the guidelines went into effect. I understand opposing counsel's argument about the practical matters and the practical implications of this. However, I think we forget that a trial court does have the ability to deviate from the guidelines if it finds necessary in the record as long as it states why it's done so. So not only is there the safeguard that we spoke about earlier as far as permanent maintenance not being reviewable, there's another safeguard that a trial court can deviate if it finds necessary. It has that in its discretion. As far as the Fifth District and Harms v. Parker, while we don't agree with the actual holding that the guidelines should not apply, even if this court is to rule that they don't apply, it doesn't mean that the trial court's decision here has to be reversed. Harms v. Parker specifically states that even when the guidelines are not applicable, an award that follows the guidelines will typically be a proper exercise of the court's discretion. Here, the court found specific findings for the factors that it found relevant. It was supported by the record. Because of her lower future income making capacity, her lower income, her age, the court has decided that it is appropriate for permanent maintenance. It could have done this prior to the guidelines being put into effect. There just wasn't a guideline saying specifically how long it had to do it. It was within the court's discretion. This could have been done prior to the guidelines. Well, I think you're right, counsel. But the problem with that is the court said specifically that the new guidelines applied and that under those new guidelines it was required, she was required, to either go with the 25 years and whatever months, I think it was just 25 years, or permanency. And those were the only two options. That seems to be problematic, even though your argument is correct. That could have been something the court could have done, but if the court was operating under possibly an erroneous assumption that it had to be 25 years or permanent, then that would seem to bolster opposing counsel's argument that the court erred here. Your Honor, I think even if the court was under that impression, the record in this matter and the testimony, the exhibits, the consideration of the factors still show that permanent maintenance is needed and is the correct outcome in this matter. But in other areas of the law where a court acts as if it has no discretion when under the circumstances by law it does have discretion, that matter is reversible error and remand is necessary. So do you disagree with that proposition, that general proposition of law where the court has to actually exercise its discretion? Your Honor, I don't agree with that in general, but I think here we can still go back to the fact that the record shows that this was the correct decision, that permanent maintenance is correct here. Whether the court came to it under the impression that they had to because of guidelines, the record here still shows that it was the appropriate duration. As far as continued need, there is clearly continued need in this case. I think that's, again, shown clearly by the record. Mark argues that first the court should have gone through the modification statute and then the maintenance statute and then the additional factors in the modification statute. They state that there's no specific factual findings in the trial court's written judgment. However, the trial court specifically goes through and states it's considered all factors. It states what factors it found relevant, what factors it found determinative. And it goes on to specifically state that there is a continuing need here. The parties' situations have not changed. If they have changed, it's not only at best. And, again, the record supports this decision. Neither party's situation has changed, again, significantly. Counselor, how is it that your client, without maintenance, cannot maintain the standard of living, that she's a custody? Other than title, is there anything else, like vacations, cars, whatever? Anything else other than the charitable giving? Your Honor, I don't believe that she would be able to maintain the standard of living, like you said. The parties had their own home. They had two nice vehicles. They helped support their adult child. Is she still doing that? Yes, Your Honor. Both parties are still doing that. Okay. They both were able to contribute to their retirement accounts, and this is all from the judgment of dissolution. And without the maintenance that she received, she would not be able to continue to do that, in terms of the standard of living. We're not asking you to concede anything at this point. I think it's more a question of math. I'm not sure if that's what Justice Turner's question was, but would you not concede it, but just in terms of addition and subtraction? Your Honor, she's using maintenance, and I know we can talk about the pot, and she uses it how she chooses to. The amount is almost the same as the amount she tithes. So if she didn't tithe, and we're not going to tell her not to tithe. No court should do that. But if she didn't, would it be correct that mathematically she does not have a need for that maintenance amount? Your Honor, I think it would be correct that mathematically she would have, obviously, more disposable income. I don't think she would have the amount that would put her in the standard of living that they enjoyed. Because of what other factors? I think just because of her regular monthly expenses. But her regular monthly expenses include tithing, and tithing is the same amount that she's getting in maintenance, essentially. So what about deducting that would prevent her from exercising the standard of living? Understanding that you contend that the tithing is part of the standard of living that was established during the marriage, but if we were just talking about mathematically, what would she not be able to do? I think she would not be able to continue to maintain the modest lifestyle that she's living now. Well, I don't understand that mathematically. I mean, she's maintaining that modest lifestyle. Your Honor, I would agree that she would then have excess money if she was not donating to her church monthly. I think we have to then look at this and the fact that it's not to be looked at, can she meet her minimum requirements and survive on that? It is if she can continue to live in the standard of living. Okay, Ms. Thomas, you're out of time. Thank you. Ms. Davis, rebuttal argument? On the tithing issue, does it make any difference that it's a tithe? I believe it does. I mean, in the sense of what if they were, assuming you dispute the husband, knowing a lot about it or approving of it or whatever, but let's suppose they were tree huggers, ecologically sensitive, and they did give to Greenpeace and the Sierra Club, and that was really, really important to her, not so important to him. He paid little attention to it, but it was something that, would we be looking at it the same way? I actually think that we would be looking at it. We would? Yes, we would, Your Honor. That's what I meant about does it make any difference that it's tithing versus other. I think that we would be looking at any sort of voluntary donations the same general way. I think that we specifically look at it in this case because it is a religious donation. It was testified to that it was a religious donation, and it's something that Mark testified to that he was not aware of during the marriage, and it's something that he does not support. Did you check the statement of facts? I did check the statement of facts, Your Honor, and I wanted to bring that up with you. That is not in the statement of facts. That's kind of important. I agree. This is absolutely something that's important, and we wish had been in the statement of facts, Your Honor, but it was testified to by both parties that, like I said earlier, there's no evidence of tithing that we can actually find through different documents from the marriage, because it was cash, not checks, if it was made. If it was made, that would have been his assumption, that it was made through cash, and he did not know about it. He did testify that he went to church with her occasionally. He testified he was not an often member. It was not something that he often went to. It was something that she usually did on her own. So he was not aware of it, not saying it did not happen. He just did not know about it, and most likely it would have been cash because there's no canceled checks, there's no receipts that were presented, and like we said, there was nothing on the tax returns. But I think that tithing creates a unique issue here because it does create a situation where the court is putting Mark in a situation where he knows that he is giving this $500, now $450, but at the time of the trial, $500 a month, and that $500 is being directly going to Marian's church. It creates this sort of entanglement that's an interesting issue for the court to look at here. But I think the court is right. If we look at this as any sort of voluntary donation, there are couples when during a marriage, you have essentially a double amount of income, and I think that's what the court was somewhat bringing up with counsel here, is that you're going to have a slightly different standard of living during the marriage because you have double the income. When a party divorces, just by the nature of divorce, we're looking at splitting that income. We use maintenance as a way of keeping the same standard of living and ensuring. That would be an argument, though, here to reduce. That would be an argument to reduce. But we also have to look at do voluntary donations that are not required and that are not necessary for a party's need for their disposable income, for their everyday needs. One spouse is devoted to animals and indulges the animal. Spends way more on it than some people might spend on a child. And the husband says, well, I wasn't really aware of it. But that was part of the standard of living in the parties. And she lists expenses for a dog that you or I might think is unreasonable, whereas another person would say, well, yeah, I don't have children. I spend that money on my dogs. I take them to the vet once a month. I get them, you know, bait, et cetera, et cetera, et cetera. How would we consider that? I believe that this is where the court has given direction and that no one factor is the determinative factor in maintenance cases. But that is part of the standard of living. Correct. That spouses enjoy. And that's where I was going with that, Your Honor, is that standard of living is a factor for the court to consider and it's for something to take into consideration. It is not the only factor. It's not the determinative factor. We have to look at all the other factors that the statute has given us, which include, like I said, needs, the ability of the parties to have income, any other sources of income they have, and their standard of living. How about the disparity in income? Your client makes, what, close to 90 grand? She only makes 50. I believe that there is a disparity in income, Your Honor. I believe that where the parties live and based on the lives we're living, if we look at their financial affidavits, there's not a huge standard of living or there's not a huge disparity, I'm sorry, in the standard of living, and that Mary Ann is able to live the same standard of living that she would be able to live without this maintenance. I see my time is up, Your Honor, unless anyone else has any questions. Counsel, I'd just like to ask you both, actually. An observation that I've made is that at the time of the original hearing, in this case, in 2014, there was no transcript, at least in this record, and I'm assuming no court reporter, and in 2017 at the hearing, we don't have a transcript, again, assuming no court reporter. Is this typical in Macoupin County? I will say I do not practice a lot in Macoupin County. From the times that I've been there, it is very typical to not have a court reporter. Ms. Thomas? Your Honor, I practice in Macoupin County a lot of authority, and yes, it is typical for the most part, yes. And I can add to the court, I believe that myself and opposing counsel had wanted a court reporter on the day of this hearing, and there was not one available. All right, counsel. Thank you both. The case will be taken under advisory.